UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| LETHANIEL LEE MCCARTER, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 3:15-CV-0352 |
| | § | |
| LORIE DAVIS, *et al*, | § | |
| | § | |
| Respondents. | § | |

**MEMORANDUM AND ORDER**

After unsuccessfully seeking state appellate and habeas relief, Texas inmate Lathaniel Lee McCarter filed a federal writ of habeas corpus under 28 U.S.C. § 2254. (Docket Entry No. 1). Respondent Lorie Davis moves for summary judgment, arguing that McCarter's claims are without merit and that he is not entitled to relief. (Docket Entry No. 10). McCarter has filed a response. (Docket Entry No. 13). After reviewing the record, the pleadings, and the applicable law, with special consideration given to the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") deferential standard of review, the Court will grant Respondent's motion for summary judgment and deny McCarter's petition. The Court will not certify any issue for appellate review.

The Court sets forth the reasons for its adjudication below.

**BACKGROUND**

The State of Texas charged McCarter with aggravated robbery in 2011. The indictment included enhancements for McCarter's two prior burglary convictions. Clerk's Record at 2-3. McCarter stood trial under cause number 11-CR-3162 in the 212th Judicial District Court of Galveston County, Texas. On direct appeal, the state appellate court summarized the facts of the crime for which McCarter was arrested as follows:

McCarter was charged by indictment for aggravated robbery with two enhancements. On the evening of November 2, 2011, 68 year-old Darlene Martin was robbed in an auto parts store parking lot. Martin testified that after exiting the store into an empty parking lot and as she was facing her driver's side door, but before she could unlock her car, Martin felt someone's hand on her shoulder and heard someone say, "Give me your purse, you Bitch, and your keys." Martin turned around and said, "[Y]ou're not getting my car." She testified that even though it was dark, there was some lighting from the store, so she could see the man's face and that he was taller than she was, but she only got a brief look at him because he slammed her into the car. Martin felt what she thought was a gun in her side and the man then said, "You're going to get hurt, you Bitch." The man pinned her up against the car, which caused her some pain, ripped her purse from her body, and ran away. Martin testified that she did not yell for help during the struggle.

After the robber ran away, Martin re-entered the store and told an employee that she had been robbed. An employee called 911, and within minutes, while Martin was still on the phone with the 911 dispatcher, Galveston Police Department Officer B. Patton arrived at the scene. Martin testified that she told the police the suspect was a black male with a shaved head, large forehead, wearing wine or dark-colored clothing and blue jeans, and a little taller than her height of 5'5". Martin testified that she initially told the police that the attacker was in his twenties, but later that night she told the police that she had misspoken and the attacker was older—at least in his thirties. She also told Officer Patton the direction in which the suspect had run.

Officer D. Simpson began looking for the suspect and testified that he was told the suspect was a black male, average height, medium build, with dark clothing. Eight minutes after the 911 call was placed, Officer Simpson found McCarter two blocks away from the auto parts store and one block from where Martin told the police the suspect had run. Simpson testified that McCarter, who was 43 years old, matched the description—5'5"-5'6", dark skin, dark clothing—and Simpson did not see anyone else in the area matching that description.

Officer Simpson testified that before he said anything to McCarter, McCarter said that he had seen the robbery and was chasing after the robber. McCarter told Officer Simpson that he heard a woman yell, "Help, help, he's got a gun," and was chasing after the robber who was wearing a black shirt when he found Martin's property in an alley. But, Martin testified that she did not yell anything about a gun during the robbery and did not mention it until she went back inside the auto parts store after the robber had already run away. Officer Simpson also testified that McCarter was fidgety and appeared nervous.

Officer Simpson found a prescription bottle with Martin's name on it, as well as Martin's cell phone and make up, in McCarter's pockets. He also found $31 in cash balled up in McCarter's shoe. Officer Simpson testified that he was familiar

> with McCarter, and McCarter never had more than $5 on his person in the past. McCarter told Officer Simpson that he found Martin's property in the bushes in an alley, but Officer Simpson found the purse under bushes ten feet from where he found McCarter. Martin testified that her purse contained approximately $150 in cash at the time of the robbery, but there was no cash in the purse when the police found it.
>
> Officer Simpson drove McCarter back to the auto parts store to see if Martin recognized him, and Martin positively identified McCarter as the robber. Martin testified that she told the police that McCarter looked like the man who robbed her, but she was only 80 percent sure. She testified that at the time of the trial she was "fairly certain"—80 to 90 percent sure—that it was McCarter who robbed her. Officer Simpson testified that McCarter first told him that the robber he had been chasing was wearing a black shirt. But McCarter's description changed after he overheard, on Officer Simpson's police radio, an officer's description of the suspect in another robbery, which took place at a nearby fast food store only a few minutes before Martin was robbed. After hearing over the radio that the fast food store's suspect was tall, in his twenties, and wearing a white shirt, McCarter told Officer Simpson that the man whom he saw rob Martin matched that description. The jury heard the audio recording -- recorded by Officer Simpson's in-car camera -- of McCarter changing the description after hearing the dispatch describing the fast food store's suspect.

*McCarter v. State*, No. 01-13-00089-CR, 2013 WL 6729001, at *1-2 (Tex. App. -Houston [1st.], 2013, pet. ref'd). The jury found McCarter guilty as charged in the indictment. Clerk's Record at 67. The trial court assessed punishment at 35 years incarceration. Clerk's Record at 71.

The First Court of Appeals for the State of Texas affirmed McCarter's conviction on December 19, 2013. *McCarter v. State*, No. 01-13-00089-CR (Tex. App. -Houston [1st.], 2013, pet. ref'd). The Texas Court of Criminal Appeals subsequently refused McCarter's petition for discretionary review on June 4, 2014. *McCarter v. State*, PDR No. 095-14 (Tex. Crim. App. 2014).

McCarter filed a state application for a writ of habeas corpus. The state trial court entered proposed findings and conclusions and, on that recommendation, the Court of Criminal Appeals denied relief on November 25, 2015.

McCarter filed a timely federal petition raising three grounds for relief:

1. Trial counsel provided ineffective representation by not objecting to statements in the prosecutor's closing argument.

2. Trial counsel's representation was deficient because he did not request that that the jury instructions contain a lesser-included-offense instruction.

3. Insufficient evidence supported McCarter's conviction.

(Docket Entry No. 1). Respondent seeks summary judgment. (Docket Entry No. 10). This matter is ripe for adjudication.

## LEGAL STANDARDS

The writ of habeas corpus provides an important, but narrow, examination of an inmate's conviction and sentence. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). "Society's resources have been concentrated at [a criminal trial] in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens." *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *see also McFarland v. Scott*, 512 U.S. 849, 859 (1994) (stating that a "criminal trial is the 'main event' at which a defendant's rights are to be determined"). The States, therefore, "possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights." *Engle v. Isaac*, 456 U.S. 107, 128 (1982). As "a foundational principle of our federal system," state courts "are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing AEDPA's "presumption that state courts know and follow the law"). Given this required deference to the state-court system, several principles circumscribe both the nature of federal habeas review and the availability of federal habeas relief.

If the inmate has presented federal constitutional claims to the state courts in a procedurally proper manner, and the state courts have adjudicated their merits, AEDPA provides for a deferential federal review. "[A] habeas petitioner has the burden under AEDPA to prove that he is entitled to relief." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000); *see also DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002). Under AEDPA's rigorous requirements, an inmate may only secure relief after showing that the state court's rejection of his claim was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2).

To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's "decision." *White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702 (2014) (stating being "merely wrong" or in "clear error" will not suffice federal relief under AEDPA). AEDPA review exist only to "guard against extreme malfunctions in the state criminal justice systems . . . ." *Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376 (2015) (quotation omitted). "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 134 S. Ct. at 1702 (quoting *Richter*, 562 U.S. at 103); *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010); *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Respondent moves for summary judgment. Summary judgment is proper when the record shows "that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). AEDPA, however, modifies summary judgment principles in the habeas context. *See Torres v. Thaler*, 395 F. App'x 101, 106 n.17 (5th Cir. 2010) ("Summary judgement in federal habeas is different than in the average civil case."); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (Rule 56 "applies only to the extent that it does not conflict with the habeas rules"), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004). For example, § 2254(e)(1), mandating that a state court's findings are presumed to be correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the non-movant. *Smith*, 311 F.3d at 668. Unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See* 28 U.S.C. § 2254(e)(1).

McCarter represents himself. Federal courts do not hold *pro se* habeas petitions "to the same stringent and rigorous standards as are pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (quotation omitted). Accordingly, "[t]he filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Id*.

## ANALYSIS

### I. Ineffective Assistance of Trial Counsel (claims one and two)

McCarter claims that his trial attorney provided ineffective by (1) failing to object when the prosecution mentioned Texas' law of parties during closing arguments and (2) not requesting

a lesser-included-offense instruction. Courts assess an attorney's representation under the general conceptual framework set out in *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Under *Strickland*, a criminal defendant's Sixth Amendment rights are "denied when a defense attorney's *performance* falls below an objective standard of reasonableness and thereby *prejudices* the defense." *Yarborough v. Gentry*, 540 U.S. 1, 3 (2003) (emphasis added); *see also Rompilla v. Beard*, 545 U.S. 374, 387 (2005); *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). McCarter faces a heavy burden regarding the *Strickland* arguments he exhausted on state habeas review. While "[s]urmounting *Strickland*'s high bar is never an easy task[,]" *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), ineffective-assistance claims that the state courts have adjudicated on the merits warrant a "doubly deferential judicial review" under AEDPA. *Knowles v. Mirzayance*, 556 U.S. 111,123 (2009); *see also Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). A state court's adjudication of *Strickland* claims "must be granted deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 562 U.S. at 101. "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

McCarter exhausted his two ineffective-assistance-of-counsel claims on state habeas review. In response to court order, McCarter's trial attorney provided an affidavit responding to his allegations. State Habeas Record at 42-43. The state habeas court issued a short order recommending that the Court of Criminal Appeals deny the *Strickland* claims. State Habeas Record at 51-52. McCarter must show that the denial of his claims was contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1).

    A.    Objections to Closing Arguments (claim one)

In his first argument, McCarter claims that counsel should have objected when the prosecution mentioned Texas' law of parties during closing arguments. Texas' law of parties allows for a defendant's conviction "if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." TEX. PENAL CODE § 7.02(a)(2). McCarter's statements to police officers led to the prosecutor's reference to Texas' law of parties. McCarter told police officers that he had been chasing a robber when he happened upon the victim's property. The prosecution's initial closing argument referred to McCarter's story that he was "the Good Samaritan and he was just chasing after this robber" when he found the victim's property, though he had "no intention of returning that property to her." Tr. Vol. 5 at 107-08. Trial counsel responded to the prosecution's discussion of another person involved in the crime:

> And another thing that happens here that I really want you to pay attention to is this: All of a sudden somehow, some way they bring in this mystical other person must have been participating in this. Remember that? We don't really know that, but it's kind of, Well, there must have been somebody else or he was getting helped or something like that. And we have got the law of parties thing, wherever that came from. You want to know why they are doing that, guys? They are doing that because they can't explain away the fact that everything was wrong. The age was wrong, the clothes are wrong, the hair is wrong. All of that is wrong. Well, Oh, by the way, he only had $35 on him instead of all the money. Really? Oh, well, the reason why that's the case is because they split it. Uh-ha. Isn't that convenient. Are you kidding me? Really?

Tr. Vol. 5 at 119. The prosecutor's rebuttal argument mocked McCarter's explanation of why he possessed the victim's property by arguing that, "if you want to believe his ridiculous story about how he was chasing after the robbery and then, oh, he ditched the purse, or I just decided to help myself to [the victim's] cell phone, to her prescription pills and some of her cash and her makeup case," then McCarter was still "a party to [the crime]. He's still guilty." Tr. Vol. 5 at 122. After then outlining the requirements for Texas' law of parties, the prosecutor argued: "And by his

story, he just sees this guy out of nowhere, runs after him, and then he participates in this by depriving Ms. Martin of her cell, her makeup case, her cash and her cell phone. So he's guilty any way you slice it." Tr. Vol. 5 at 123.

Trial counsel did not object to the prosecutor's discussion. The jury instructions included language explaining the law of parties. Clerk's Record at 63. The jury, however, delivered a general verdict that did not specify whether it found McCarter guilty as the primary actor or as a party.

McCarter complains that counsel should have objected to the "misapplication" of the law of parties. McCarter's federal briefing does not elaborate on how the State's argument misapplied the relevant law. On state habeas review, however, McCarter specified that the evidence did not show that he had agreed with the mysterious robber to commit the crime and that McCarter did not assist him in aggravated robbery. McCarter argued that "the State's theory that just because [he] was in possession of [the victim's] property, he is guilty as a party to robbery is a misstatement of the law." State Habeas Record at 28.

On state habeas review, trial counsel provided an affidavit that explained why the defense did not object:

> The transcript provided in [McCarter's] motion appears to be concerning arguments which address the idea of the law of parties. At the time of trial, it is my recollection that I felt the State was addressing the defensive strategy used at trial; that being that Mr. McCarter happened to come upon the robbery in progress and intended to give the items back to the [victim]. In the statement, the State says, "there is no intent to act together", which I understood to mean the State felt the law of parties was not appropriate in this case. I felt this helped our case as I wanted to distance Mr. McCarter from the actual robber as much as possible. Additionally, I did not believe the statements were improper nor did they violate any statute or contribute new facts harmful to the accused.

State Habeas Record at 42. Trial counsel also gave his opinion that the outcome of the proceedings would not have been different had he objected to the State's closing. "Mr. McCarter

was caught at the crime scene right after the alleged robbery with the victim's items on his person. He was later identified at the scene by the [victim]. It is my belief objecting to a sentence in a closing argument and/or adding a lesser included would not have resulted in any different outcome at trial." State Habeas Record at 42-43.

McCarter has not shown that the state habeas court's rejection of his first claim was unreasonable. The prosecution chose to respond to McCarter's statements to police officers by relying on the law of parties. Under Texas law, a prosecutor's argument may include: (1) a summary of the evidence; (2) reasonable deductions from the evidence; (3) response to opposing counsel's argument; and (4) pleas for law enforcement. *Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990). It is not clear that the prosecution's statements were a misstatement of the law. *See Davis v. State*, 490 S.W.3d 268, 278 (Tex. App.- Fort Worth, 2016) ("The law of parties, described in section 7.02(a) of the penal code, requires no agreement."). Still, Trial counsel was not caught off guard by the State's reliance on the law of parties. The decision not to interpose objections to the opposing counsel's jury argument can be a matter of trial strategy. *See Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992). Counsel's affidavit shows that the defense evaluated those comments and chose not to object, considering them to be somewhat helpful to the defense. Additionally, trial counsel did not consider the comments to be impermissible jury argument. Having considered the statements in context, and in light of trial counsel's strategic evaluation, the Court finds that a reasonable attorney could chose not to object during closing arguments. The state habeas court's rejection of this claim was not contrary to, or an unreasonable application of, federal law.

B. Lesser-Included-Offense Instruction (claim two)

The jury instructions only allowed for McCarter's conviction of aggravated robbery. The trial court instructed jurors that, to find McCarty guilty of aggravated robbery, the evidence must show that "while in the course of committing theft of property and with intent to obtain or maintain control of said property," he "intentionally, knowingly, or recklessly threaten[ed] or place[d] [the victim], a person 65 years of age or older, in fear of imminent bodily injury or death." Clerk's Record at 63. Here, McCarter argues that the facts allowed for his conviction of the lesser-included offense of theft. Under Texas law "[a] person commits an offense [of theft] if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE § 31.03(a).

To determine whether the trial court should give a jury instruction for a lesser offense, Texas law requires that: (1) "the lesser included offense must be within the proof necessary to establish the offense charged"; and (2) "there must be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense." *Richards v. Quarterman*, 566 F.3d 553, 568 (5th Cir. 2009). McCarter argues that the jury could have found that he possessed the victim's property but, because of weaknesses in the eyewitness testimony, find that he did not place the victim in fear of imminent bodily injury or death. McCarter complains that trial counsel provided ineffective assistance by not seeking a jury instruction on theft and that a reasonable probability exists that the result would have been different had counsel done so.

Trial counsel's affidavit explained that the decision not to seek a lesser-included offense was a strategic move: "At the very beginning of my representation of Mr. McCarter. it was our defense that he had no involvement at all in the events that took place and fully intended to give the items in his possession to the police. Therefore, I felt the addition of a lesser included offense in the jury charge was inappropriate." State Habeas Record at 42. Trial counsel also opined that

seeking a lesser-included-offense instruction on theft "would not have resulted in any different outcome at trial." State Habeas Record at 43.

The Texas Court of Criminal Appeals has found that a defense attorney does not act deficiently in failing to request a lesser included offense if he was pursuing an all-or-nothing trial strategy *See Ex Parte White,* 160 S.W.3d 46, 55 (Tex. Crim. App. 2004). Although choosing to forgo a lesser-included-offense instruction makes jurors choose between conviction and an acquittal is "risky," it "is sometimes successful." *Lynn v. State,* 860 S.W.2d 599, 603 (Tex. App. 1993). The Fifth Circuit has found that a trial attorney's decision to pursue an "all-or-nothing strategy was not objectively unreasonable," even when lesser-included-offense instructions were available. *See Druery v. Thaler,* 647 F.3d 535, 540 (5th Cir. 2011); *see also Slater v. Davis*, 717 F. App'x 432, 435-36 (5th Cir. 2018).

Here, trial counsel made a strategic decision not to seek an instruction on theft. "[S]crutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Although McCarter may now disagree, strategic decisions by counsel are "virtually unchallengeable" and generally do not provide a basis for post-conviction relief. *Strickland*, 460 U.S. at 689. McCarter could only overcome the heavy deference paid trial counsel's decisions by showing that it was "so ill chosen that it permeate[d] the entire trial with obvious unfairness." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002). Even considering McCarter's arguments about problems with the eyewitness testimony, a reasonable attorney could conclude that an all-or-nothing strategy would be in his client's best interests. Additionally, the evidence does not show that any prejudice caused by the alleged deficiency "is such that there is a reasonable probability that the result of the proceedings would have been different." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997).

For those reasons, the state habeas court's rejection of McCarter's ineffective-assistance claim was not contrary to, or an unreasonable application of, federal law. See 28 U.S.C. § 2254(d)(1).

## II.     Sufficiency of the Evidence (claim two)

McCarter's third claim argues that insufficient evidence supported his conviction for aggravated robbery. Pointing to what he considers to be weaknesses in the prosecution's case against him, McCarter's insufficiency claim centers on the victim was unable to identify him with complete certainty. McCarter also highlights testimony suggesting discrepancies between the victim's description of her assailant and his own appearance when arrested. With those concerns, McCarter claims that the jury had insufficient evidence to convict him beyond a reasonable doubt.

Under *Jackson v. Virginia*, 443 U.S. 307 (1979), a reviewing court affirms a jury's conviction if, considering all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have returned a verdict unfavorable to the defendant. This demanding inquiry is highly deferential to the jury's verdict. *See United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002); *United States v. Duncan*, 919 F.2d 981, 990 (5th Cir. 1990). AEDPA augments the *Jackson* analysis, creating a doubly high barrier to federal habeas relief. S*ee Coleman v. Jackson*, 566 U.S. 650, 651 (2012); *Perez v. Cain*, 529 F.3d 588, 599 (5th Cir. 2008). When adjudicating an insufficiency-of-the-evidence claim a federal court only asks whether the state court's assessment of the already-strict *Jackson* standard was unreasonable. Together, *Jackson* and AEDPA create a "double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011).

The intermediate appellate court denied McCarter's *Jackson* claim on direct appeal. The appellate court began by identifying the elements necessary for McCarter's conviction:

> A person commits aggravated robbery if "in the course of committing theft" and "with intent to obtain or maintain control of the property," he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death, if the other person is 65 years of age or older." TEX. PENAL CODE ANN. § 29.02(a)(2) (West 2011); § 29.03(a)(3)(A) (West 2011). A person commits theft if "he unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a) (West Supp. 2013).

*McCarter*, 2013 WL 6729001, at *3. The intermediate appellate court then identified three important factors that supported McCarter's conviction. First, police officers found "McCarter -- who matched the suspect's description -- in possession of Martin's stolen property, within eight minutes of the 911 call" and "only one block away from where Martin told the police that the suspect had run." *Id*. Second, "Martin positively identified McCarter at the scene and told the police that she was 80 percent sure he was the robber. At trial, Martin testified that she was 80 to 90 percent sure that it was McCarter." *Id*. Finally, "McCarter's conduct indicate[d] consciousness of guilt" by acting "fidgety and nervous" and giving "contradictory descriptions of the robber whom he was allegedly chasing." The jury had to opportunity to consider "McCarter's explanation for possessing [the victim's] property and the fact that [the victim] did not unequivocally identify McCarter as the robber." *Id*. at *4.

The appellate court applied the *Jackson* standard and found that the sufficient evidence supported Jackson's conviction for aggravated robbery. Considering the trial testimony and the requirements of state law, and doing so in a light most favorable to the jury's verdict, McCarter has not shown that the state court's adjudication of his claim was contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1). The Court will deny McCarter's third ground for relief.

# CERTIFICATE OF APPEALABILITY

Under AEDPA, a prisoner cannot seek appellate review from a lower court's judgment without receiving a Certificate of Appealability ("COA"). *See* 28 U.S.C. § 2253(c). McCarter has not yet requested that this Court grant him a COA, though this Court can consider the issue *sua sponte*. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). "The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal." *Slack v. McDaniel*, 529 U.S. 473, 482 (2000). A court may only issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Fifth Circuit holds that the severity of an inmate's punishment, even a sentence of death, "does not, in and of itself, require the issuance of a COA." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). The Supreme Court has explained the standard for evaluating the propriety of granting a COA on claims rejected on their merits as follows: "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484; *Miller-El*, 537 U.S. at 336-38. On the other hand, a district court that has denied habeas relief on procedural grounds should issue a COA "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484; *Miller-El*, 537 U.S. at 336-38. Unless the prisoner meets the COA standard, "no appeal would be warranted." *Slack*, 529 U.S. at 484.

Having considered McCarter's petition, and in light of AEDPA's standards and controlling precedent, this Court determines that a COA should not issue on any claim.

## CONCLUSION

For the reasons described above, the Court **GRANTS** Respondent's motion for summary judgment, **DENIES** McCarter's petition, and **DISMISSES** this case **WITH PREJUDICE**. All other requests for relief are **DENIED**. The Court will not certify any issue for appellate review.

The Clerk will send a copy of his order to the parties.

SIGNED at Galveston, Texas, this 20th day of August, 2018.

*George C. Hanks Jr.*
George C. Hanks Jr.
United States District Judge